[No. D003609. Fourth Dist., Div. One. July 22, 1986.]

JAMES T. HAY, Plaintiff and Appellant, v.
SCRIPPS MEMORIAL HOSPITAL—LA JOLLA,
Defendant and Respondent.

755

**COUNSEL**

Sullivan, Workman & Dee and Robert E. Jenks, Jr., for Plaintiff and Appellant.

Weissburg & Aronson, Albert C. Mour, Kenneth M. Stern and Patricia E. Sinskey for Defendant and Respondent.

**OPINION**

**LEWIS, J.**—James T. Hay, M.D., appeals the denial of his petition for writ of mandate. Dr. Hay requested clinical privileges to perform dilation

and curettage (D&C) procedures at Scripps Memorial Hospital—La Jolla (the Hospital). The Hospital reaffirmed its policy that a physician must satisfy a minimum requirement of completion of a residency in obstetrics and gynecology (OB-GYN) in order to receive D&C privileges at this hospital. Dr. Hay's application was therefore denied. We are called upon to determine whether the Hospital's policy determination to require the OB-GYN residency as a prerequisite to D&C privileges is so lacking in evidentiary support when the administrative record is viewed in the light most favorable to the Hospital as to be arbitrary, capricious or unreasonable. We hold that the record is not so lacking in evidentiary support for the Hospital's policy decision.

I

FACTS

The Hospital is a private nonprofit hospital. The responsibility for operation of a general acute care hospital rests in the hospital's governing body. (See 22 Cal. Admin. Code, § 70035.) The governing body is responsible for appointing and reappointing members to the hospital's medical staff and for requiring the medical staff to establish controls designed to insure the achievement and maintenance of high standards of professional and ethical practice. The governing body must require all physicians to demonstrate their ability to perform surgical and other procedures competently and to the satisfaction of any appropriate staff committee. (See Cal. Admin. Code, tit. 22, § 70701, subd. (a)(7).) The hospital must have an organized medical staff responsible for the fitness, adequacy and quality of medical care rendered to patients in the hospital and the medical staff must establish bylaws which provide formal procedures for the evaluation of staff applications and credentials, appointments, appeal mechanisms and other subjects or conditions that the medical staff and governing bodies deem appropriate. (See *id.*, § 70703.)

Dr. Hay graduated from Jefferson Medical College in Pennsylvania in 1972 and completed an internship at the Navy Regional Medical Center in San Diego and a three-year residency in family practice at the Navy Regional Medical Center at Camp Pendleton. During his family practice residence, Hay completed eight months of inhospital rotation in OB-GYN. He entered private practice in 1978 and applied for and was granted staff privileges in the Department of Family Practice at Scripps Memorial Hospital—La Jolla and at Scripps Memorial Hospital—Encinitas. At the Encinitas facility, those privileges include the right to perform D&C procedures. At the La Jolla facility, the family practice staff privileges do not include the right to perform D&C procedures. In 1981 Dr. Hay became aware he did not have

D&C privileges at the La Jolla hospital and made application for those privileges. There is no dispute concerning the administrative process which was followed. Dr. Hay's request for D&C privileges was forwarded to the family practice supervisory committee which recommended the granting of those privileges. That recommendation was forwarded to the OB-GYN supervisory committee which recommended that the policy of requiring a satisfactory residency in obstetrics and gynecology as a condition of D&C privileges at the La Jolla hospital be continued. On April 20, 1982, the executive medical committee by a vote of five to four returned Dr. Hay's application to the OB-GYN supervisory committee to evaluate the application for D&C privileges based upon Dr. Hay's training and experience and on the basis he has boards which state that he has training to perform the procedure. The OB-GYN supervisory committee adhered to its initial position that an applicant for D&C privileges must have completed a residency in obstetrics and gynecology. An OB-GYN residency is a four-year training program. The surgery supervisory committee met on May 3, 1982.

"The committee members in their discussion, then reiterated and agreed that in Scripps Memorial Hospital—La Jolla, with the high degree of sophistication and specialist availability, that lesser trained physicians should not be allowed to perform any surgical procedures whatsoever and that this was in keeping with the tradition of the practice of medicine in this hospital for the last 10 to 12 years.

"A motion was then made that any physician accepted to do surgery in Scripps Memorial Hospital—La Jolla should fulfill the absolute minimum criteria that the physician must have completed a surgical residency training program in surgery. The motion was seconded and carried with a 'yes' vote of 10 and a 'no' vote of 2 (Family Practice and Anesthesia)." The executive medical committee approved that decision on May 12, 1982. The matter was then appealed by Dr. Hay to the judicial review hearing committee which held a hearing in August 1982, and in September 1982 the committee reported:

"The Hearing Committee holds that the issue is not the competence of a certain individual to do a certain procedure, but rather, the issue is jurisdiction over privileges and the ability and right to require residency as a prerequisite for a specific privilege. Although the mechanism to settle jurisdictional disputes between departments is not entirely clear, if the Executive Medical Committee is assumed to be the body to resolve such disputes, it clearly delegated that jurisdiction to the Department of Obstetrics and Gynecology in this case. The right of a department to require a residency as a prerequisite for a specific privilege has numerous precedents, for ex-

ample, performance of surgery, fiberoptic bronchoscopy, and treadmill testing, at this hospital.

"It does not appear arbitrary, unreasonable or capricious, in the opinion of the committee, for the Department of Obstetrics and Gynecology, as part of efforts to ensure the high quality of care, to require a residency in Obstetrics and Gynecology as qualification for performance of D&C's and the committee therefore rules in favor of the Executive Medical Committee that Dr. Hay's request for privileges to do D&C's be denied."

Dr. Hay appealed that decision to the board of trustees and the board ruled against Dr. Hay and in favor of the recommendation of the executive medical committee on or about June 22, 1983.

Dr. Hay petitioned in the superior court for mandamus to compel the Hospital to grant him D&C privileges. His petition alleged the Hospital had made a quasi-legislative decision that was arbitrary, capricious and unreasonable and contrary to public policy and there was no evidentiary support for the policy adopted. His petition for a peremptory writ of mandate was denied and Dr. Hay brings this appeal, making the same assertions.

## II

### THE LAW

There is no dispute between the parties about the law applicable to this case. ■ California law recognizes two types of mandamus review of the decisions made by hospitals with regard to physician medical staff privileges. Where a physician's medical staff privileges have been denied, suspended or terminated on the ground the physician has not demonstrated an ability to comply with established standards, that administrative decision is classified as "quasi-judicial" and review is by administrative mandamus. However, where the physician has had privileges denied or curtailed because of the implementation of a "policy" of the hospital, the administrative action is classified as "quasi-legislative" and reviewable by traditional mandamus. (See, for example, *Lewin* v. *St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 382-386 [146 Cal.Rptr. 892]; *Centeno* v. *Roseville Community Hospital* (1979) 107 Cal.App.3d 62, 71 [167 Cal.Rptr. 183]; *Santa Ana Tustin Community Hospital* v. *Board of Supervisors* (1982) 127 Cal.App.3d 644, 652-653 [179 Cal.Rptr. 620].) ■ In reviewing a rulemaking or policymaking decision of the governing board of a nonprofit hospital corporation, if the decision was substantively rational, lawful, not contrary to established public policy and the proceedings were fair, a court may not substitute a judgment for that of the governing board even if it

disagrees with the board's decision. (*Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 558 [116 Cal.Rptr. 245, 526 P.2d 253]; *Blank* v. *Palo Alto–Stanford Hospital Center* (1965) 234 Cal.App.2d 377, 392 [44 Cal.Rptr. 572].) The scope of review in traditional mandamus proceedings is limited to an examination of the record of the hospital proceedings to determine whether the action taken was substantively irrational, unlawful or contrary to established public policy or procedurally unfair. (See, for example, *Santa Ana Tustin Community Hospital, supra*, 127 Cal.App.3d 644, 653; *Lewin, supra,* 82 Cal.App.3d 368, 385.) The Court of Appeal review of the hospital proceedings is essentially the same as the trial court's review and examination of the evidence is limited to the administrative record and is to be viewed in the light most favorable to the hospital's decision. (*Santa Ana Tustin Community Hospital, supra*, at p. 653; *Lewin, supra,* at pp. 386-387.)

■■ Dr. Hay asserts the Hospital in this case did not make a sufficient record of the reasons for its policy decision, for example as set out in *Lewin, supra.* However, in *Lewin* the policy decision was as to the relative merits of "open staff" versus "closed staff" operation of the chronic hemodialysis unit in the hospital and the decision was made in favor of the "closed staff" operation of those facilities and the reasons therefor were set out by the hospital in detail. It should be noted this decision involved choosing between physicians of equal qualification to be eligible to use the facilities and perform the procedures. (See *Lewin, supra,* 82 Cal.App.3d at p. 378.) Here we do not have a choice between the use of physicians of equal qualification but rather a decision as to what the minimum qualifications for the D&C procedures in this hospital shall be. Similarly in *Centeno* v. *Roseville Community Hospital, supra,* 107 Cal.App.3d 62, the detailed analysis by the hospital governing board was required to establish the reason for the exclusive radiology medical services contract with a partnership of doctors from which the plaintiff had resigned. All doctors competing for the privileges had the same qualifications. (*Id.,* at p. 76.) The same was true in *Blank.* (See *Blank* v. *Palo Alto–Stanford Hospital Center, supra,* 234 Cal.App.2d at pp. 386, 389, 394.) All the cases on which Dr. Hay relies for the assertion this hospital's administrative decision was not based on evidence set forth in the record are distinguishable in this important respect: They were all cases where physicians of equal qualification were being excluded from a privilege that was extended to other physicians of the same qualifications. Here, where the distinction is being made between physicians who have the qualification of having completed a four-year residency in obstetrics and gynecology as opposed to those physicians who have not completed such a residency and do not possess that qualification, the reasons for the distinction are somewhat obvious.

In May 1982, the OB-GYN supervisory committee stated: "'[T]his committee's requirement to evaluate any applicant for gynecological surgical privileges is a satisfactory completion of an approved residency in obstetrics and gynecology. We believe that an arbitrary assignment of a number of procedures overlooks the fact that competency to perform a procedure is not based on the mere numbers. We have stated our standard and feel that changing the previously established guidelines would create a double standard which would compromise the quality of care.'" The surgical supervisory committee decided that "any physician accepted to do surgery in [the hospital] should fulfill the absolute minimum criteria that the physician must have completed a surgical residency training program in surgery." This decision was based on a determination that "with the high degree of sophistication and specialist availability, . . . lesser trained physicians should not be allowed to perform any surgical procedures whatsoever and that this was in keeping with the tradition of the practice of medicine in this hospital for the last 10 to 12 years." The executive medical committee concluded:

"We feel that the mere numbers of a procedure are not adequate to establish competency and that surgical dexterity is not the sole criteria on which to grant these privileges.

"The four year training program in a residency in obstetrics and gynecology gives involvement in the problems in gynecological surgery, pathology, complications, and indications which are not equaled by a rotation through gynecology in a family practice residency.

"The feeling of this is echoed in the minutes of the surgical supervisory committee and in the minutes of the medical supervisory committee which are in this folder. We feel that family practitioners performing D&C's would create a double standard of patient care de facto and we, OB-GYN supervisory committee, would be in a position of having to attest to the surgical competency of a physician who we feel lacks the basic training to do this procedure.

". . . . . . . . . . . . . . . . . . . . . . .

"The recommendations of the academy of family practice, we feel, apply to communities where specialists are not predominant more than in La Jolla. La Jolla is not a medically deprived community where any medical care is better than none. We have a large and fully—full group of various types of physicians. One must, in consideration of the good of the patient, refer patients and problems to the best qualified physician.

"Should the OB-GYN committee judge an applicant who [it] does not feel has adequate training and approve him because it is forced to do so and

should a complication or difficulty arise and result in legal action, might it not be stated that the committee in this hospital were derelict in their screening in letting a physician operate who did not have the qualifications judged by the committee as adequate?''

■ This court has held in *Elam* v. *College Park Hospital* (1982) 132 Cal.App.3d 332 [183 Cal.Rptr. 156], that a hospital can be liable to a patient for the negligence of a member of its medical staff when the hospital's failure to ensure the competence of its medical staff through selection and review creates an unreasonable risk of harm to its patients.

■ The Hospital's administrative record was not, as Dr. Hay asserts, ''bereft'' of any reasons to support a decision to continue to require the completion of an OB-GYN residency as a minimum requirement for D&C privileges at the Hospital.

■ Although Dr. Hay's assertions of error allege an absence of evidence to support the Hospital's decision, his real complaint is that the requirement of a residency in obstetrics as a minimum qualification for D&C privileges at the La Jolla facility is substantively irrational. As we have seen, ''[a] rule or policy decision of general application adopted by the governing authority of a hospital . . . impinging on the right of a physician to practice his or her profession fully will not be set aside by a court unless it is substantively irrational, unlawful or contrary to established published policy or procedurally unfair.'' (*Lewin* v. *St. Joseph Hospital of Orange, supra,* 82 Cal.App.3d 368, 385; *Miller* v. *Eisenhower Medical Center* (1980) 27 Cal.3d 614, 626-627 [166 Cal.Rptr. 826, 614 P.2d 258].) His real complaint, simply put, asks: Isn't it substantively irrational to allow Dr. Hay and others with a family practice specialty to perform D&C surgery at Scripps–Encinitas but to require the completion of a four-year residency in obstetrics to perform the same surgery at Scripps–La Jolla? The Hospital's response is in plain terms, that in a locale where there are adequate numbers of doctors available who have completed the four-year obstetrics and gynecology residency, it is not irrational for a hospital to require that training as a minimum qualification for all obstetrical-gynecological surgeries. We agree. There is nothing facially irrational about limiting staff privileges for particular procedures to people with higher levels of training in the specialty. There is nothing facially irrational about regarding a four-year residency in obstetrics and gynecology as a higher level of training for gynecological surgery than a family practice residency with a rotation through obstetrics. The fact that doctors without that training are granted D&C privileges in other locales does not make the requirement irrational in places where people with the higher level of training are plentiful. It is not irrational to conclude that more training is better than less training. The medical staff committees and

the trustees decided to continue to require the higher level of training. The court will not categorize that decision as irrational.

■ Finally, Dr. Hay argues the Hospital's policy violates public policy. He refers us to *Mich. Academy of Family Phys.* v. *Blue Cross* (6th Cir. 1984) 728 F.2d 326, where an administrative regulation set up two different payment schedules for the same medical services, one for specialists and one for nonspecialists, and this distinction was declared invalid on the ground the regulation was inconsistent with the mandate of Congress. The court there found the regulation to have a pernicious impact on the cost of medical care and an inflationary impact on the health care system. The court also made reference to Congress' clearly expressed concern for the continued need to protect and encourage primary medical care. Respondent points out the *Michigan Academy* case concerns the validity of certain Medicare regulations promulgated by the Secretary of Health and Human Services, and the fact that the Hospital has a policy which requires a residency in OB-GYN to perform D&C procedures does not prevent a family practitioner from providing primary medical care and does not prevent such a physician from performing D&C procedures at other facilities where conditions are somewhat different including Scripps' own facility in Encinitas. ■ The Hospital asks us to take judicial notice of the Joint Commission on Accreditation of Hospitals (JCAH) standards set forth in the JCAH Accreditation Manual for Hospitals pursuant to Evidence Code section 452, subdivision (h). We are permitted to take judicial notice of these documents. (See *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 819 [140 Cal.Rptr. 442, 567 P.2d 1162].) ■ This manual places the responsibility on the medical staff to assure that each member is qualified and to strive to maintain the optimal level of professional performance of its members through appointment procedures and specific delineation of clinical privileges. (See 1981 JCAH Manual p. 93.) Specialty board certification is designated by JCAH as an "excellent benchmark" in determining requirements for particular staff privileges. (*Id.*, at pp. 95-96.) Also JCAH recognizes that requirements for clinical privileges at each hospital will not be the same, that is, clinical privileges are hospital specific and demonstrated competency will not assure that specific privileges will be granted.

"Clinical privileges are hospital-specific. Thus, an individual may be a member of more than one hospital staff, yet have different practice privileges in each hospital. The possession of adequate professional qualifications based on training and experience does not in itself assure the granting of specific privileges." (1981-1985 JCAH Manual, pp. 91-92.) The requirement of the completion of an OB-GYN residency of four years as a minimum requirement of staff privileges to do D & C procedures at the Hospital does not violate public policy and is not substantively irrational or unlawful. Nor

did any procedural unfairness attend this case. The trial court properly denied the writ.

The judgment is affirmed.

Wiener, Acting P. J., and Work, J., concurred.