117 F.3d 421
 1997-1 Trade Cases P 71,851, 97 Cal. Daily
Op. Serv. 5173,
97 Daily Journal D.A.R. 8400
James C. McDANIEL, Plaintiff-Appellant,
v.
APPRAISAL INSTITUTE, a Corporation Organized Under the Laws
of the State of Illinois, fka American Institute of Real
Estate Appraisers of the National Association of Realtors;
Dan W. Mahoney, Husband; Susan Mahoney, Wife; Sanders
Solot, Husband; Ruth-Jean Solot, Wife, et al., Defendants-Appellees.
 No. 94-17158.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 16, 1996.
Decided June 30, 1997.
 
 Mike Tully, J. Michael Tully, Tucson, Arizona, for plaintiff-appellant.
 Howard R. Wine, Law Office of Howard R. Wine, Tucson, Arizona, for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona; Jack E. Tanner, District Judge, Presiding. D.C. No. CV-93-00262-JET.
 Before: SNEED, PREGERSON and KLEINFELD, Circuit Judges.
 Opinion by Judge KLEINFELD; Concurrence by Judge PREGERSON.
 KLEINFELD, Circuit Judge:
 
 
 1
 McDaniel was denied certification as an "MAI appraiser" by the Appraisal Institute, a private nonprofit professional association. The only issue in this appeal is whether he established a genuine issue of material fact, in his Sherman Act, section 1 antitrust claim.
 
 Facts
 
 2
 McDaniel has repeatedly sought certification as a Member of the American Institute of Real Estate Appraisers. An appraiser does not have to be a Member of the Appraisal Institute in order to do business. But, according to McDaniel's evidence, MAI appraisers get over 90% of the commercial business in Pima County, Arizona, where he works. The non-MAI appraisers like McDaniel are left mostly with less lucrative residential appraisals.
 
 
 3
 The Appraisal Institute is a private nonprofit group which publishes materials on appraising, provides continuing education for appraisers, and certifies people whom it judges to be very highly competent by its standards. To be an MAI appraiser, one must complete a continuing education program, pass a comprehensive examination, demonstrate at least five years of general appraisal experience, obtain credit for three years of specialized appraisal experience and satisfy a "good moral character" requirement.
 
 
 4
 McDaniel has repeatedly been rejected based upon failure to obtain sufficient credits for specialized appraisal experience. It is not that he has not performed commercial appraisals for at least three years. His problem is that the Institute does not think his appraisals were good enough. In 1985, for example, the admissions committee stated that there was "massive fraud in his presentation and manipulation of data to achieve a desired answer." They claimed that he used "totally bogus data" such as using the same comparable at $4.25 per square foot and $7.74 per square foot according to what gave the desired answer, and that "this type of fraudulent reporting appeared in most of his 1980, 1981 and 1982 work." With respect to other commercial properties, the admissions committee said that McDaniel used "fictitious comparables." The admissions committee also noted defects which might be considered competence rather than honesty issues, such as discounting value by only 20% for property that was "flooded in the rainy season [because it was] actually within the channel of the Tanque Verde Creek." They also noted an appraisal report depreciating a twelve year old building by only 6% and not adjusting value of comparables for location.
 
 
 5
 McDaniel claims that the membership process is too subjective. He sued the Appraisal Institute and a number of its members who acted on his application for admission. He claims that because the Appraisal Institute dominates commercial appraisal in southern Arizona, and excludes him, it is an illegal conspiracy in restraint of trade under the Sherman Act, 15 U.S.C. § 1.
 
 Analysis
 
 6
 The district court granted summary judgment against plaintiff, and we affirm. "[S]ummary judgment on an antitrust claim may be appropriate," Bhan v. NME Hospitals, Inc., 929 F.2d 1404, 1409 (9th Cir.1991), and we review de novo. Id. at 1408. Defendants have argued that much of plaintiff's evidence was not cognizable, for lack of personal knowledge or other defects, but the district court did not rule on their motion to strike. We find it unnecessary to decide whether the motion should have been granted, because even considering the challenged evidence, on de novo review, we reach the same conclusion as the district court.
 
 
 7
 To demonstrate a violation of section 1 of the Sherman Act, the plaintiff must show, among other things, that the defendant "unreasonably restrained trade under either a per se rule of illegality or a rule of reason analysis." Bhan v. NME Hospitals, Inc., 929 F.2d 1404, 1410 (9th Cir.1991). McDaniel does not argue that Appraisal Institute certification is a per se violation, like horizontal price fixing. See id. That limits him to "rule of reason" analysis. To apply "rule of reason" analysis, to this claim, we look for "the actual effects that the challenged restraint has had on competition in a relevant market." Id. McDaniel has submitted no evidence of any purchases or sales made through the Appraisal Institute. Cf. Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co., 472 U.S. 284, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985).
 
 
 8
 McDaniel argues that this case is analogous to Pinhas v. Summit Health, Ltd., 894 F.2d 1024 (9th Cir.1989). We disagree. That was a 12(b)(6) case, this is a summary judgment case, so in the case at bar, unlike Pinhas, it was incumbent on plaintiff to present evidence. Also, the claims are different with respect to the effects of the putative restraint on competition in a relevant market. Pinhas was an ophthalmological surgeon. When Medicare reimbursement for assistants became unavailable, he proposed to operate without assistants, but the hospital insisted on keeping a requirement that they be used. He was not permitted to perform surgeries at the hospital without them. We held that facts could be proved within the allegations showing an adverse affect on competition in the relevant market, on the theory that if Dr. Pinhas's unassisted surgeries were barred by the hospital, the other surgeons would have less competitive pressure on their fees.
 
 
 9
 Because the case at bar is an appeal from a summary judgment, it was incumbent upon the plaintiff to oppose it with evidence of "injury to the competition in the relevant market" as an element of his Sherman Act claim. Id. at 1032. It is not enough for McDaniel to show that a competitor, himself, was injured by the Appraisal Institute's certifications. Id.; Oltz v. St. Peter's Community Hospital, 861 F.2d 1440, 1448 (9th Cir.1988). McDaniel did not submit evidence that competition was injured. The evidence showed without contradiction that McDaniel competed freely in the appraisal market in Pima County. He was at a disadvantage compared to MAI appraisers because he did not have an MAI certification. But that is no different in principle from the disadvantage of a seller of a lower quality product has against a higher quality product; it must sell the product for less money, make its product available more conveniently, or otherwise give consumers a good reason to buy it. McDaniel was free to compete with the MAI appraisers for every job.
 
 
 10
 McDaniel offered no evidence whatsoever that Appraisal Institute certification distorts competition. The lack of MAI status did not exclude McDaniel from the commercial work he wanted; consumer choice did. McDaniel's freedom to compete in the appraisal market was protected by federal law, which requires various federal agencies not to exclude a certified or licensed appraiser "solely by virtue of ... lack of membership in any particular appraisal organization." 12 U.S.C. § 3351(d).
 
 
 11
 On its face, the Appraisal Institute's certification program enhances competition and efficiency of markets by reducing search costs and mistakes. See Consolidated Metal Prod. v. American Petroleum Institute, 846 F.2d 284, 296 (5th Cir.1988) ("Because product information reduces uncertainty, it both increases consumer demand for the product and encourages producers to prove their products."); National Association of Review Appraisers v. Appraisal Foundation, 64 F.3d 1130, 1133 (8th Cir.1995) ("Establishing and enforcing" membership, educational, and ethical criteria "may even serve some pro-competitive purposes by increasing the relative market efficiencies."). In practical terms, a seller or borrower hiring an appraiser would have to spend hours on the telephone to check on an unknown appraiser before hiring him, were it not for a certification process felt to be sufficiently reliable to substitute for individual investigation. Thus a trusted certification makes it cheaper, in terms of the cost of gathering information, to hire a stranger, so strangers can compete more effectively with those dominating a local market. Other things being equal, this increased competition and reduced transaction cost will reduce prices. To the extent that prices of some appraisers are likely to be increased by certification, the increment reflects more knowledge by consumers of quality differences:
 
 
 12
 The role of information in economic theory has expanded rapidly.... George Akerlof presented an interesting theory of "lemons." Suppose that only sellers of used automobiles know their quality. Potential buyers will correctly assume that the owners of inferior-quality automobiles will be especially eager to sell their cars, so these potential buyers will offer only as much as the poorest quality car is worth--and that will be the only quality that sellers offer for sale. (This vicious circle can be broken if sellers can acquire deserved reputations for reliability.)
 
 
 13
 George J. Stigler, Memoirs of An Unregulated Economist 80-81 (1988). "MAI" provides information in much the same manner as a name brand.
 
 
 14
 The most analogous case we have found is Sanjuan v. American Board of Psychiatry and Neurology Inc., 40 F.3d 247 (7th Cir.1994). In that case psychiatrists passed the written examinations for their boards, but failed the orals. The American Board of Psychiatry and Neurology, like the American Institute of Real Estate Appraisers, was a private association which certified achievement of a standard of excellence. Like the Appraisal Institute, the Board did not control licensing, and an individual could practice psychiatry without board certification. The Seventh Circuit reached the same conclusion we do, that there was no antitrust injury, because "plaintiffs already are sellers in the market for psychiatric services; turning down their application for certification does not remove their output from the market and therefore does not raise prices to consumers." Id. at 251; see also Consolidated Metal Prod. v. American Petroleum Institute, 846 F.2d 284, 293-94 (5th Cir.1988) ("the establishment and monitoring of trade standards is a legitimate and beneficial function of trade associations").
 
 
 15
 Nor is the case at bar like the real estate brokers listing cases, of pooled listings, cooperation, and commission splitting. United States v. Realty Multi-List, Inc., 629 F.2d 1351 (5th Cir.1980). In Realty Multi-List, no one could buy a house listed in the multiple listing service without dealing with someone in the group. Anyone can buy appraisal services without dealing with the Appraisal Institute. Indeed, so far as the evidence shows, buyers and sellers of appraisal services do not deal with the Appraisal Institute at all. The buyers of appraisal services hire the sellers individually. There can be no cartel where there are no price restrictions, no production restrictions, and no market share arrangements, explicit or tacit, among the competing entrepreneurs.
 
 
 16
 AFFIRMED.
 
 
 17
 PREGERSON, Circuit Judge, concurring in the result.
 
 
 18
 I concur in the result. I write separately because, unlike the majority, I believe that McDaniel has demonstrated that the Appraisal Institute ("Institute") has effectively excluded him from the product market of real estate appraisals. The majority concludes that because McDaniel is not completely barred from the product market, the Institute does not have sufficient market power to violate Sherman Act § 1. Majority Op. at 424. All that is required for a § 1 violation, however, is an effective exclusion from the product market. "[W]hen the cooperating group possesses sufficient market power that a nonmember can no longer compete effectively with members, the restraint must be found to have sufficient adverse competitive impact to violate Section 1." United States v. Realty Multi-List, Inc., 629 F.2d 1351, 1373 (5th Cir.1980); see also Silver v. New York Stock Exch., 373 U.S. 341, 348, 83 S.Ct. 1246, 1252, 10 L.Ed.2d 389 (1963) (noting that a stock broker is effectively excluded from the product market when his nonadmission to a listing service deprives him of a significant volume of trading). The Institute only accepts between two and seven percent of its applicants, and members of the Institute obtain more than ninety-three percent of the appraisal positions in Southern Arizona. Given these figures, the Institute has effectively excluded McDaniel from the product market for commercial real estate appraisals.
 
 
 19
 Nevertheless, McDaniel has provided no evidence of the relevant geographic market. "[T]he factual support needed to show injury to competition must include proof of the relevant geographic ... market[ ]...." Les Shockley Racing, Inc. v. National Hot Rod Ass'n, 884 F.2d 504, 508 (9th Cir.1989). Although McDaniel argues that Southern Arizona is the relevant market, he has provided no evidence to support his assertion. See Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd., 924 F.2d 1484, 1490 (9th Cir.1991) (noting that a conclusory assertion of the relevant geographic market is inadequate).