[No. A034681. First Dist., Div. Five. Aug. 25, 1987.]

ERNEST BONNER, Plaintiff and Respondent, v.
SISTERS OF PROVIDENCE CORPORATION et al., Defendants
and Appellants.

## COUNSEL

Rochelle D. Alpert, Michael L. Zigler and Morrison & Foerster for Defendants and Appellants.

Charles F. Forbes, Musick, Peeler & Garrett, David E. Willett and Hassard, Bonnington, Rogers & Huber as Amici Curiae on behalf of Defendants and Appellants.

Brian McCarthy, McCarthy & Leonard and McCarthy, Leonard & Spain for Plaintiff and Respondent.

## OPINION

**HANING, J.**—The Sisters of Providence Corporation, board of directors of Providence Hospital, and medical staff of Providence Hospital (appellants) appeal a judgment granting respondent Dr. Ernest Bonner's petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5), in which respondent challenged appellants' decision to revoke his provisional nephrology privileges at Providence Hospital. Appellants contend that (1) respondent's petition was barred by the statute of limitations, (2) the trial court erroneously considered evidence of a Board of Medical Quality Assurance (BMQA) proceeding against respondent, and (3) the revocation of respondent's privileges is supported by substantial evidence. We reverse.

In November 1980, respondent was granted provisional staff privileges, including nephrology privileges, at Providence Hospital.[1] On May 14, 1981, respondent's nephrology privileges were revoked, but his general staff privileges remained intact. Following numerous de novo hearings and reviews by the hospital, the revocation of provisional nephrology privileges was confirmed on February 9, 1982.

Pursuant to Business and Professions Code section 805, appellants reported the revocation to BMQA on March 4, 1982.[2] Based on this report, BMQA tentatively concluded that respondent's conduct may have been grossly negligent and incompetent, and therefore in violation of the Medical Practice Act. (Bus. & Prof. Code, § 2000 et seq.) BMQA is required to take action against any licensed physician charged with such unprofessional conduct. (Bus. & Prof. Code, § 2234, subds. (b), (d).) Consequently, BMQA's regional medical quality review committee, whose purpose is to review the quality of medical care provided by physicians and surgeons (Bus. & Prof. Code, §§ 2320-2336), conducted an investigation.

BMQA reviewed the records of nine patients whose treatment resulted in appellants' revocation of privileges to determine whether it should take action against him for gross negligence and/or incompetence. The regional medical quality review committee consultant advised the committee's senior special investigator that investigation revealed a pattern of incompetence and recommended that five of the nine cases be referred to an expert for opinion. After reviewing the five cases, the expert replied that respondent's treatment of two of the patients was appropriate, his treatment of two showed departures from the standards, and his treatment of one showed extreme departure from the standard as well as lack of knowledge and ability in carrying out medical responsibilities. Thereafter, BMQA held a conference with respondent to review the matter. Respondent acknowledged errors in his treatment of two patients. As a result of the expert's

---

[1] Providence Hospital medical staff bylaws establish the qualifications of the medical staff members and the policy and procedures regarding medical staff appointment, dismissal, conduct and practice in Providence Hospital. The bylaws define "medical staff" as physicians, dentists, and podiatrists.

Physicians holding provisional privileges have been approved for medical staff membership, but their privileges are qualified to the extent that their clinical competence is observed by designated members of the active staff for six months after appointment, at which time the credentials committee reviews the new members' status and recommends either termination of the provisional qualification or extension of provisional status for another six months.

Unless otherwise noted, any further reference to "bylaws" shall mean the Providence Hospital medical staff bylaws.

[2] Business and Professions Code section 805 states, in pertinent part: "The chief executive officer and the chief of the medical staff, where one exists, of any [licensed] health facility . . . shall report to the agency which issued the license . . . when any licensed physician . . . is denied staff privileges . . . for any medical disciplinary cause or reason."

opinion and respondent's acknowledgment of error, BMQA proceeded with an accusation based on respondent's treatment of patients S.W. and P. F., and referred the matter to the Attorney General for further proceedings.[3]

An administrative law judge (ALJ) then held a hearing on the accusation and issued his proposed decision wherein he found respondent's treatment of patients P. F. and S. W. demonstrated neither negligence nor incompetence, that no cause for disciplinary action existed, and dismissed the accusation. On December 10, 1984, BMQA adopted the ALJ's decision, effective January 9, 1985. (Gov. Code, § 11517.)

On April 16, 1985, respondent filed the instant petition for writ of mandamus. Relying heavily on the BMQA proceeding, he alleged, inter alia, that appellants' findings on which they based the revocation of his provisional nephrology privileges were not supported by substantial evidence. Although the preliminary BMQA-investigation materials, the transcript of the BMQA hearings, and the decision of the ALJ were before the trial court, the accusation itself, all subsequent pleadings and prehearing decisions, and certain exhibits submitted into evidence at the BMQA hearing were not. The trial court issued an alternative writ commanding appellants to reinstate respondent or show why they had not done so. Appellants demurred to the petition on the ground it was barred by the three-year statute of limitations (Code Civ. Proc., § 338, subd. 1), and also moved to strike from the petition all reference to the BMQA findings. The trial court ruled that the petition was not barred by the statute of limitations and that "the findings are not supported by substantial evidence in the light of the whole record." It granted a peremptory writ of mandamus directing the reinstatement of respondent's provisional nephrology privileges, noting the "record of the Administrative Proceedings [was] received into evidence and examined by the Court, and additional evidence [was] received by the Court . . . ." The trial court did not specifically rule on appellants' motion to strike the BMQA materials and no statement of decision was requested. However, the record indicates that the BMQA record was received and considered, and both parties treat the case on appeal as though the BMQA record was before the trial court and was instrumental in its decision.

*Statute of Limitations*

■    Appellants contend that Code of Civil Procedure section 338, subdivision 1, which requires an "action upon a liability created by statute" to be filed within three years, bars respondent's action because his petition was

---

[3] An accusation is the formal complaint against a physician setting forth the charges upon which the disciplinary action is undertaken. (Gov. Code, § 11503.)

filed more than three years after the hospital's decision. Respondent, citing *Lasko* v. *Valley Presbyterian Hospital* (1986) 180 Cal.App.3d 519 [225 Cal.Rptr. 603], contends his action is governed by the four-year period of Code of Civil Procedure section 343.[4] In *Lasko,* a physician was denied admission or readmission to the respective medical staffs of two hospitals. In at least one hospital his request for review of his denial was made in accordance with the hospital's bylaws governing review of denial. More than three years later he petitioned for writ of mandamus pursuant to Code of Civil Procedure section 1094.5. The basis of his petition was similar to respondent's herein. Because "[t]here is no statute which specifically establishes any liability on the part of the Hospitals in connection with these particular claims appellant alleges," *Lasko* concluded the four-year statute of limitations was applicable. (180 Cal.App.3d at p. 526.)

Appellants rejoin that since respondent's petition alleged that physicians at their hospital are organized into a medical staff, "governed by law and by duly promulgated Medical Staff Bylaws," it arises from a liability created by Business and Professions Code section 2282.[5] Their reliance on this section is misplaced. Business and Professions Code section 2282 simply makes it a breach of professional conduct for a physician to practice in a hospital which does not comply with the statute. This section is merely one of many in the Medical Practice Act specifying misconduct which may subject a physician to discipline by BMQA. It does not create a liability giving rise to any cause of action, except to support disciplinary proceedings by BMQA.

Appellants also contend, by analogy to *Peles* v. *La Bounty* (1979) 90 Cal.App.3d 431 [153 Cal.Rptr. 571], that California Administrative Code, title 22, sections 70035, 70701, subdivision (a)(7), and 70703, subdivisions (a) and (b),[6] comprise a statutory scheme which satisfies the "liability creat-

---

[4] Code of Civil Procedure section 343 states: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

[5] Business and Professions Code section 2282 states, in pertinent part: "The regular practice of medicine in a licensed general or specialized hospital having five or more physicians and surgeons on the medical staff, which does not have rules established by the board of directors thereof to govern the operation of the hospital, which rules include, among other provisions, all the following, constitutes unprofessional conduct: (a) Provision for the organization of physicians and surgeons licensed to practice in this state who are permitted to practice in the hospital into a formal medical staff with appropriate officers and bylaws . . . . (b) Provision that membership on the medical staff shall be restricted to physicians and surgeons . . . competent in their respective fields and worthy in professional ethics . . . . (c) Provision that t.e medical staff shall be self-governing with respect to the professional work performed in the hospital. . . . "

[6] Health and Safety Code section 1275 requires the State Department of Health to adopt rules and regulations governing hospitals. Pursuant to this authority, California Administrative Code, title 22, section 70035 provides that the governing body of a hospital is the body in which final authority and responsibility for conduct of the hospital is vested. Section 70701, subdivision (a)(7) requires the hospital medical staff to establish controls designed to ensure

ed by statute" requirement of Code of Civil Procedure section 338, subdivision 1. In *Peles* a graduate student at a California state university petitioned for a writ of mandamus on the basis of alleged violations of constitutional rights more than four years after he was expelled for plagiarism. *Peles* held the three-year statute of limitations was applicable because the action was founded on constitutional rights and on "regulations governing the California State University and Colleges enacted pursuant to statute (reorganized Ed. Code, § 89030; Cal. Admin. Code, tit. 5, § 41301 et seq.)." (*Peles, supra,* 90 Cal.App.3d at p. 435.) Education Code section 89030 requires state university and college trustees to adopt rules and regulations for government of the state universities and colleges. Pursuant to this authorization, California Administrative Code, title 5, section 41301 permits expulsion, "[f]ollowing procedures consonant with due process established pursuant to [California Administrative Code, title 5] section 41304," of a student found plagiarizing. California Administrative Code, title 5, section 41304 requires the chancellor to prescribe a code of student disciplinary procedures, which shall provide for, inter alia, notice, hearing, determination of fact, and review. These sections, in other words, obligate the university to follow certain steps when disciplining a student. Failure to do so makes the university liable for breach of an obligation imposed by statute. The Administrative Code sections cited by appellants, however, do not obligate a hospital to abide by a particular disciplinary scheme. They only require the adoption of bylaws providing for evaluation, assignment of privileges, and appeals. Respondent did not allege that appellants failed to adopt such bylaws, nor any other breach of an obligation imposed by statute. Thus, his petition was timely under Code of Civil Procedure section 343.

### *Standard of Review*

■ Respondent incorrectly contends the trial court was required to apply the "independent judgment" test in reviewing appellants' decision. The trial court's inquiry in the review of an administrative decision "shall extend to the questions . . . whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5,

the achievement and maintenance of high standards of professional ethical practices. The controls must provide that all members of the medical staff demonstrate their ability to perform surgical and/or other procedures competently and to the satisfaction of an appropriate committee or committees of the staff, at the time of original application for appointment to the staff and at least every two years thereafter. Section 70703, subdivision (a) requires each hospital to have an organized medical staff, which is composed of physicians, responsible to the governing body for the adequacy and quality of the medical care rendered to patients in the hospital. Section 70703, subdivision (b), requires the organized medical staff to establish bylaws to provide formal procedures for evaluation of staff applications and credentials, appointments, reappointments, assignment of clinical privileges, appeals mechanisms and other subjects and conditions the medical staff and governing body deem appropriate.

subd. (b).) "[I]n cases arising from private hospital boards . . . abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (d); *Gaenslen* v. *Board of Directors* (1985) 185 Cal.App.3d 563 [232 Cal.Rptr. 239]; *Anton* v. *San Antonio Community Hospital* (1982) 132 Cal.App.3d 638 [183 Cal.Rptr. 423].) Because Providence Hospital is a private institution, the trial court correctly applied the "substantial evidence" test. (See also *Unterthiner* v. *Desert Hospital Dist.* (1983) 33 Cal.3d 285, 297, fn. 6 [188 Cal.Rptr. 590, 656 P.2d 554].)

When the standard of review for the trial court is substantial evidence, i.e., when the trial court "must uphold the hospital judicial review committee's decision unless administrative findings viewed in light of the entire record are so lacking in evidentiary support as to render them unreasonable," the standard of review for the appellate court is the same. *(Gaenslen* v. *Board of Directors, supra,* 185 Cal.App.3d at pp. 572-573 [232 Cal.Rptr. 239] and citations therein.) Like the trial court, we also review the administrative record to determine whether its findings are supported by substantial evidence in light of the whole record, our object being to ascertain whether the trial court ruled correctly as a matter of law.

### Admission of BMQA Proceedings

■■■ Appellants contend the BMQA proceedings were improperly admitted as evidence before the trial court. They argue that the BMQA proceedings, which occurred after their decision, are not relevant and, even if they are, the factual evidence produced therein could have been produced during appellants' hearings. When reviewing a final administrative order, the trial court considers the record of the proceedings before the administrative board. (Code Civ. Proc., § 1094.5, subd. (a).) If the trial court finds "there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced . . . at the hearing before [the administrative board]," it may admit it. (Code Civ. Proc., § 1094.5, subd. (e).) Evidence is relevant if it has a "tendency in reason to prove or disprove any disputed fact." (Evid. Code, § 210.) The facts in dispute before the trial court were whether respondent's patient care met the standard required by appellants of those physicians to whom they grant nephrology privileges. The question, then, is whether the BMQA proceedings tend to prove that respondent's nephrology practice met appellants' standards. Since the purpose of hospital review of staff privileges is different from that of BMQA proceedings, evidence of the latter is not always relevant in administrative mandamus proceedings to review such hospital action.

BMQA is a board within the Department of Consumer Affairs. (Bus. & Prof. Code, § 2001.) The function of any consumer affairs board is to set

standards, prepare and conduct examinations of and pass upon applicants, conduct investigations of violations of laws within the board's jurisdiction, issue citations and hold hearings for the revocation of licenses, and impose penalties when appropriate. (Bus. & Prof. Code, § 108.) Pursuant to these functions, BMQA is divided into three divisions: Medical Quality, Licensing, and Allied Health Professions. (Bus. & Prof. Code, § 2003.) The Medical Quality Division is responsible for (a) enforcement of the disciplinary and criminal provisions of the Medical Practice Act; (b) administration and hearing of disciplinary actions; (c) carrying out disciplinary actions appropriate to findings made by a medical quality review committee, the division, or an ALJ; (d) suspending, revoking, or otherwise limiting certificates after the conclusion of disciplinary actions; and (e) reviewing the quality of medical practice by physician and surgeon certificate holders under the jurisdiction of the board. (Bus. & Prof. Code, § 2004.) The Medical Quality Division is mandated to enforce and administer the laws governing conduct of physicians. (Bus. & Prof. Code, § 2220.)

In discharging its functions, BMQA may investigate complaints from other physicians or health care facilities that a physician may be guilty of unprofessional conduct. (Bus. & Prof. Code, § 2220.) It may delegate its authority to investigate and institute proceedings to investigators and medical consultants so long as it assumes final disciplinary action against a physician. (Bus. & Prof. Code, § 2224.) The Medical Quality Division is specifically directed to take action against any physician charged with unprofessional conduct. Unprofessional conduct includes gross negligence and incompetence. (Bus. & Prof. Code, § 2234, subds. (b), (d).) Once the Medical Quality Division, a review committee or an ALJ has found a physician guilty, it may impose discipline ranging from revocation of the physician's certificate to such other action as it deems proper. (Bus. & Prof. Code, § 2227.) BMQA, in other words, is charged with determining that the conduct of physicians does not fall below the level of professionalism imposed upon them by the State of California. A BMQA action determines whether and under what conditions a physician will continue to be licensed in California. ■ Furthermore, BMQA cannot revoke a physician's certificate, or otherwise discipline him or her, unless it can prove by clear and convincing evidence that the physician's conduct was so unprofessional that he or she had to be disciplined to protect the public. (See *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 73, fn. 6 [64 Cal.Rptr. 785, 435 P.2d 553]; *Ettinger* v. *Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 856 [185 Cal.Rptr. 601].)

Being licensed, however, is only the threshold requirement for a physician to obtain staff privileges at most hospitals. The state's decision to license a physician to practice medicine does not include a determination

that the physician is qualified for practice within a particular medical specialty. When a physician seeks hospital privileges for a specialty, "his qualifications to engage in the specialty are not established by a licensing agency." (*Unterthiner* v. *Desert Hospital Dist., supra,* 33 Cal.3d at p. 297.) As appellants' bylaws provide, "[o]nly physicians . . . licensed to practice in their fields in the State of California, who can document . . . with sufficient adequacy to assure the Medical Staff and the Governing Board that any patient treated by them in the hospital will be given a high quality of medical care, shall be qualified for membership on the Medical Staff. *No physician . . . shall be entitled to membership on the Medical Staff or to the exercise of particular clinical privileges in the hospital merely by virtue of the fact that he is duly licensed to practice in this or in any other state . . . .*" (Italics ours.)

Hospital bylaws are required to provide that the medical staff "establish controls that are designed to ensure the achievement and maintenance of high standards of professional ethical practices including provision that all members of the medical staff be required to demonstrate their ability to perform . . . procedures competently and to the satisfaction of an appropriate committee or committees of the staff, at . . . least every two years" after appointment to the staff. (Cal. Admin. Code, tit. 22, § 70701, subd. (a)(7).) The medical staff is responsible to the hospital for the adequacy and quality of the medical care rendered to patients in the hospital. (Cal. Admin. Code, tit. 22, § 70703, subd. (a).) Clinical privileges are hospital specific. ▮ So long as there is a rational basis for the medical staff's requirements for clinical privileges, a hospital may make its requirements as stringent at it deems reasonably necessary to assure adequate patient care. (*Hay* v. *Scripps Memorial Hospital* (1986) 183 Cal.App.3d 753, 763 [228 Cal.Rptr. 413].) Hospital review boards do not review their physicians' conduct to determine whether they should be licensed to practice medicine in California. Their review is for the purpose of determining whether the medical staff members provide the quality of care the hospital requires.

▮ In the instant case, the BMQA proceedings were not concerned with respondent's ability to meet and maintain the standards required by Providence Hospital for holders of staff privileges in the field of nephrology, nor were the hospital's standards in issue. The ALJ conducting the BMQA proceedings did not hear the same witnesses nor have before him all the evidence considered by the hospital's committees. Given these undisputed facts, the BMQA proceedings were clearly irrelevant to the issue of respondent's ability or fitness to comply with or meet appellants' standards for medical staff privileges, and therefore inadmissible. We also note that respondent made no attempt to establish that the witnesses he called at the BMQA proceedings could not, in the exercise of reasonable diligence, have

been produced at the hearing before the hospital committees. (Code Civ. Proc., § 1094.5, subd. (e).)

*Substantial Evidence*

■ In light of the foregoing discussion, it remains for us to determine whether the hospital's adjudicatory hearings contain substantial evidence to sustain its findings and action. "[T]he reviewing court must uphold the hospital judicial review committee's decision unless administrative findings viewed in light of the entire record are so lacking in evidentiary support as to render them unreasonable." (*Gaenslen* v. *Board of Directors, supra,* 185 Cal.App.3d at p. 572.) "Under the substantial evidence test, it is not the function of reviewing courts to resolve differences of medical judgment." (*Cipriotti* v. *Board of Directors* (1983) 147 Cal.App.3d 144, 154 [196 Cal.Rptr. 367].)

It is not necessary for us to reiterate the meticulous patient-by-patient review of respondent's care and treatment which appellants' expert witnesses presented before the hospital committees. Dr. Unger described specific instances of failure to perform certain required diagnostic tests, misunderstanding of particular medications, and improper assessment of hydration. He concluded that respondent lacked experience in and an assimilation of the various methods of management of patients with kidney diseases, that he took a simplistic approach insufficient for patients with life-threatening diseases, and that he did not have the requisite training and competence for nephrology privileges. Dr. Kronfield concurred, identifying specific physiological functions relative to kidney treatment in which respondent lacked sufficient understanding. Dr. Schwartz listed areas in which a nephrologist must be expert—evaluating and treating hypertension, performing dialysis and related procedures, and evaluating and treating electrolyte disorders—so that other physicians can rely on the nephrologist's opinion. He identified specific treatment by respondent showing respondent's lack of understanding in those areas. Respondent conceded certain errors and, in response to other charges, contended that he merely failed to record on the patients' charts that he had performed the required tests or made particular diagnoses. It can readily be inferred that he did not. "[J]ust as courts have largely deferred to administrative expertise in determining whether an applicant is qualified to practice a profession in the first instance [citation], they should defer to administrative expertise in determining whether the professional is qualified to take on the additional responsibilities involved in a grant of hospital privileges." (*Unterthiner* v. *Desert Hospital Dist., supra,* 33 Cal.3d at p. 298.)

This principle is particularly applicable to the type of professional decision under review. Courts are ill-equipped to assess the judgment of qua-

lified physicians on matters requiring advanced study and extensive training in medical specialties. *(Unterthiner* v. *Desert Hospital Dist., supra,* 33 Cal.3d at pp. 294-295.) The principle is magnified in the instant case by respondent's failure to produce any substantial evidence on his own behalf, including but not limited to his failure to call any expert witness to support his position. The evidence is sufficiently substantial to support appellants' findings that respondent failed to meet its standards for the acquisition and maintenance of staff nephrology privileges. There is no evidence that appellants acted arbitrarily or capriciously, nor for any reason other than sound medical judgment. Consequently, the conclusion of the trial court is not supported by the record.

The judgment is reversed with directions to recall the writ of mandamus, and to enter a new judgment denying the petition.

Low, P. J., and King, J., concurred.

A petition for a rehearing was denied September 17, 1987, and respondent's petition for review by the Supreme Court was denied November 10, 1987.