[No. B090580. Second Dist., Div. Two. Oct. 23 1995.]

ROBERT M. WEBMAN, Plaintiff and Appellant, v.
LITTLE COMPANY OF MARY HOSPITAL, Defendant and Respondent.

---

## COUNSEL

Russell Iungerich for Plaintiff and Appellant.

McDermott & Trayner and Ronald G. Trayner for Defendant and Respondent.

---

## OPINION

**BRANDLIN, J.**\*—Robert M. Webman, M.D., appeals from a judgment denying his petition for a peremptory writ of mandate to compel his reappointment to the medical staff of Little Company of Mary Hospital (LCMH). (Code Civ. Proc., § 1094.5.) He contends: "[I.] The denial of appellant Webman's application for reappointment was neither reasonable nor necessary. [II.] Neither the facts as found by the superior court in its Statement of Decision nor the facts as found by the LCMH Judicial Review Committee are supported by substantial evidence."

### FACTS

Initially we note that appellant, in derogation of his "burden of producing a record which overcomes the presumption of validity favoring [the] judgment" (*Weiss* v. *Brentwood Sav. & Loan Assn.* (1970) 4 Cal.App.3d 738, 746 [84 Cal.Rptr. 736]), neglected to designate the administrative record and transcript as part of the record on appeal, despite the fact that they are cited extensively in his briefs and are essential for the resolution of his contentions on appeal. Though the failure to produce an adequate record can result in the dismissal of an appeal (*Ehman* v. *Moore* (1963) 221 Cal.App.2d 460, 463 [34 Cal.Rptr. 540]; *Barry* v. *Rodgers* (1962) 199 Cal.App.2d 298, 301-302 [18 Cal.Rptr. 723]; *Altman* v. *Poole* (1957) 151 Cal.App.2d 589, 593 [312 P.2d 6]) or the summary affirmance of a judgment (*Weiss* v. *Brentwood Sav. & Loan Assn., supra,* 4 Cal.App.3d at p. 746; *Conner* v. *Rose* (1963) 219 Cal.App.2d 327, 328-329 [32 Cal.Rptr. 919]), we nonetheless decided to have the omitted materials transferred to this court on our own motion. (Cal. Rules of Court, rule 12(a).)

---

\*Judge of the Municipal Court for the South Bay Judicial District sitting under assignment by the Chairperson of the Judicial Council.

Our review of the written and testimonial evidence presented during the administrative hearing disclosed the following.[1] In appellant's application for reappointment to LCMH's professional staff for the years of 1992-1993, he responded positively to a question asking whether, "[d]uring the past two years, [his] privileges at any hospital [had] been suspended, diminished, restricted (including proctoring), revoked, not renewed, or denied, including voluntary relinquishment/resignation." In the course of LCMH's investigation into appellant's adverse disclosure, it obtained copies of two health facility reporting forms Memorial Hospital of Gardena (MHG) had filed with the Medical Board of California pursuant to Business and Professions Code section 805 (section 805 reports).

The first section 805 report, dated July 3, 1990, revealed appellant had suffered a summary suspension in excess of 14 days based on: "1). Instances of failure . . . to visit his patients in the hospital in violation of hospital protocol and potentially jeopardizing the care of acutely ill hospitalized patients; 2). Failure to utilize appropriate medical judgment in the treatment of patients; 3). Failure to document important patient information on patient's charts; 4). Inconsistency between stated diagnosis of patient and recorded diagnosis for DRG purposes; 5). Behavior which appeared to be irrational causing inappropriate conflicts with hospital personnel; uncooperativeness with hospital personnel; verbal abuse of hospital employees and nursing staff[;] and 6). Refusal to attend a patient in the Intensive Care Unit." The second report, dated June 5, 1991, noted that "[after] [a] final review of the patient charts involved in the initiation of the charges, it was felt that the matters in question regarding Dr. Webman['s] practice were resolvable by means other than corrective action."

On February 14, 1992, LCMH wrote to MHG seeking verification of appellant's status at that hospital. Its letter indicated a signed consent from appellant was enclosed. MHG's response, dated February 25, 1992, essentially reiterated the information set forth in the two section 805 reports. More

---

[1]Two points raised by appellant in his opening brief are worthy of comment. First, he represents that the minutes of the LCMH committees were admitted without objection, not as evidence of the truth of their contents, but "as procedural documents preceding the hearing." Not only was the scope of these items not limited in this manner below, but section 8.3-2(g) of LCMH's bylaws calls for the admission of "[a]ny relevant evidence . . . if it is the sort of evidence on which responsible persons are accustomed to rely on [sic] the conduct of serious affairs, regardless of the admissibility of such evidence in a court of law." Even if this were not the case, however, it would have had no effect on the outcome of the reappointment proceedings. Second, appellant refers in his opening brief to events involving his privileges at another hospital with which LCMH purportedly merged after the administrative proceedings had concluded. Appellant's failure to confine his discussion to matters in the record on appeal is, of course, improper. (Cal. Rules of Court, rule 13; *People* v. *Keligian* (1960) 182 Cal.App.2d 771, 774 [6 Cal.Rptr. 680].)

precisely, it confirmed a portion of appellant's clinical privileges had been suspended after some questions arose about his care of patients, but that ultimately "it was felt that the matters in question regarding [his] practice were resolvable by means other than corrective action." MHG did not identify the "means" it had employed, or explain why it had opted for a solution other than "corrective action," though its letter did divulge that appellant had not held active staff membership privileges at MHG after February 1991.

Upon the recommendation of LCMH's medical executive committee, a subcommittee of the department of medicine (subcommittee) held a special meeting on March 30, 1992, to interview appellant about the problems he had experienced at MHG. Appellant referred the subcommittee to the explanation he had asked his attorney to draft shortly after MHG elected not to take corrective action against him. He declined to describe in his own words what had happened at MHG and when asked whether the subcommittee could review the MHG charts which had given rise to the section 805 reports, he said "no." Unable to complete its evaluation of appellant's application for appointment, the subcommittee decided to send letters to MHG and appellant requesting copies of or access to the relevant MHG records.

In a letter dated April 7, 1992, LCMH informed appellant the interview had not "provide[d] [LCMH] with information in support of [appellant's] professional competence and clinical judgment as it relate[d] to [his] activity at [MHG]." It further requested that appellant clarify the reason for his summary suspension at MHG and furnish LCMH with copies of the charts alluded to in the two section 805 reports. Appellant was cautioned that no final action could be taken on his reappointment application until LCMH had an opportunity to review the charts. That same day, LCMH sent MHG a follow-up letter seeking to review the cases mentioned in the section 805 reports or to obtain copies of them for review. LCMH also inquired into the circumstances that had led to appellant's no longer being on staff at MHG.

LCMH received answers to its letters in May 1992. In appellant's reply, dated May 6, 1992, he disclosed only that his suspension at MHG had been rescinded, insisted he had no obligation under LCMH's bylaws to provide copies of charts from any other hospitals and announced he was rescinding any authorization he had previously given to permit review of his records at any hospital other than LCMH.[2] A few weeks later, on May 29, 1992, LCMH received a somewhat cryptic letter from MHG that simply said,

---

[2]A subsequent attempt by LCMH to gain appellant's cooperation was met with a similar rebuff.

"Please be advised that Memorial Hospital of Gardena, [*sic*] cannot release the medical records you requested in your letter dated April 7, 1992, concerning Robert M. Webman, M.D."

Adopting a more emphatic stance, LCMH on June 23, 1992, apprised appellant in writing that the MHG charts were relevant to his " 'professional competence and clinical judgment in the treatment of patients', [*sic*] which is a criterion for reappointment under Article V, Section 5.3(c) of the Professional Staff Bylaws" and that his failure to cooperate "itself would justify a refusal to reappoint [him] to the Professional Staff." It warned, "Your membership on the Professional Staff will expire on June 30, 1992, unless you are reappointed prior to that date. If the charts in question have not been made available for consideration by the Department of Medicine, you will not be reappointed, not because the charts will be assumed to contain information that would disqualify you, but because you will have refused to cooperate in the reappointment process after many efforts on the part of the Professional Staff to encourage you to do so."

The next day, appellant's attorney voiced his objections to LCMH's course of action and demanded a hearing at which it would be determined whether legal cause existed to deny appellant's application for reappointment.

On July 6, 1992, the department of medicine approved a motion recommending appellant "not be reappointed for his failure to comply with the reappointment process . . . ." The medical executive committee accepted the recommendation on July 27, 1992. Appellant was notified of the decision on July 31, 1992, and of his right to have the judicial review committee consider the matter.

On August 28, 1992, appellant requested a hearing before the judicial review committee and on September 18, 1992, LCMH sent him a "notice of charges" letter. It alleged that by refusing to provide the department of medicine with copies of the patient charts alluded to in the section 805 reports, appellant had "violate[d] the agreements and authorizations set forth in the Professional Staff Reappointment Application which [he] signed on July 9, 1991[;] . . . violate[d] Section 5.3 of the Professional Staff Bylaws by failing to meet [his] burden of producing information for a proper evaluation of competence, character, ethics and other qualifications, and resolving any doubts about such qualifications[; and] . . . prevent[ed] the Department of Medicine from fully reviewing [his] professional competence and clinical judgment in the treatment of patients, which must be reviewed in order to make a recommendation under Section 5.3."

The judicial review committee hearing took place on March 10, 1993. After considering the documentary and testimonial evidence that was presented, the judicial review committee concluded the medical executive committee's recommendation "was reasonable and warranted." Dissatisfied with the outcome, appellant thereafter sought review from the appellate review committee of the governing board of LCMH. When that body affirmed the judicial review committee's decision on July 20, 1993, appellant petitioned the superior court for relief.

DISCUSSION

## I. *Legal Justification of Decision to Deny Application for Reappointment*

It has been said that " 'the essential nature of a qualified physician's right to use the facilities of a hospital is a property interest which directly relates to the pursuit of his livelihood.' " (*Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 823 [140 Cal.Rptr. 442, 567 P.2d 1162].) On the other hand, it is also recognized that ". . . a hospital can be liable to a patient for the negligence of a member of its medical staff when the hospital's failure to ensure the competence of its medical staff through selection and review creates an unreasonable risk of harm to its patients." (*Hay* v. *Scripps Memorial Hospital* (1986) 183 Cal.App.3d 753, 761 [228 Cal.Rptr. 413]; *Bell* v. *Sharp Cabrillo Hospital* (1989) 212 Cal.App.3d 1034, 1050 [260 Cal.Rptr. 886]; *Elam* v. *College Park Hospital* (1982) 132 Cal.App.3d 332 [183 Cal.Rptr. 156].)[3] Consequently, "[a] physician's right to pursue his livelihood free from arbitrary exclusionary practices must be balanced against other competing interests: the interest of members of the public in receiving quality medical care, and the duty of the hospital to its patients to provide competent staff physicians." (*Rhee* v. *El Camino Hospital Dist.* (1988) 201 Cal.App.3d 477, 489 [247 Cal.Rptr. 244]; Bus. & Prof. Code, §§ 809, 809.05; Cal. Code Regs., tit. 22, §§ 70701, subd. (a)(7), 70703, subds. (a) and (b).) "In the exercise of this duty, the hospital must

---

[3]Appellant mistakenly assumes "[t]his species of potential malpractice liability [has] largely [been rendered] extinct" by a recent California Supreme Court decision, *Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218 [23 Cal.Rptr.2d 397, 859 P.2d 96]. The court in *Alexander* decreed that physicians' ". . . applications and reapplications for staff privileges are 'records' of medical staff committees under [Evidence Code] section 1157(a)." (*Id.* at pp. 1223-1224.) However, in so holding it emphasized, "By its terms, Evidence Code section 1157 creates only a privilege against discovery from medical staff committees; it does not create a bar against introduction of evidence. [Citations.] Nor does section 1157 prevent a plaintiff from otherwise discovering relevant information by, inter alia, deposing a physician and asking whether he or she was previously denied staff privileges, or by reviewing public records to determine whether the physician has suffered a malpractice judgment or disciplinary action. [Citation.]" (*Id.* at pp. 1223-1224, fn. 4.)

be free to establish and enforce selection and review procedures, so long as they do not result in arbitrary or discriminatory practices." (*Rhee* v. *El Camino Hospital Dist., supra*, 201 Cal.App.3d at p. 501.)

 Appellant argues that inasmuch as it was uncontroverted his record at LCMH was unblemished, "the interests of the public in quality medical care and of the hospital to provide its patients with a competent physician [were] satisfied." We disagree.

In order for LCMH to fulfill its legal duty to its patients, it was obliged to investigate any disclosures made in an application for reappointment, or uncovered in the ensuing review process, which raised questions about a professional staff member's quality of care at another hospital, notwithstanding the fact that his or her competency at LCMH had not been called into doubt. (See *Bell* v. *Sharp Cabrillo Hospital, supra*, 212 Cal.App.3d 1034; Bus. & Prof. Code, §§ 805, 805.5.) This responsibility came into play here since the record unequivocally demonstrated appellant's privileges at MHG were summarily suspended because of issues relating to his care of patients. Furthermore, contrary to what appellant has asserted, the evidence did not show MHG later rescinded its action or concluded its original concerns had been unfounded. Rather, the situation was resolved "by means other than corrective action." Shortly after that occurred, appellant's active staff status at MHG ceased. A few months later, MHG prepared its follow-up section 805 report to the Medical Board of California.

Notwithstanding MHG's second section 805 report, LCMH had legitimate reasons for suspecting appellant might have engaged in behavior "detrimental to patient safety or to the delivery of patient care." (Bus. & Prof. Code, § 805, subd. (a)(6).) The sequence and timing of events between the two section 805 reports raised questions about a possible link between the cessation of appellant's privileges at MHG and MHG's decision not to take corrective action. Hospitals have a duty to report a physician's resignation "following notice of an impending investigation based on information indicating medical disciplinary cause or reason." (Bus. & Prof. Code, § 805, subd. (b)(3).) However, they have been known to "place pressure upon an incompetent physician to resign his privileges" in lieu of filing the requisite section 805 report with the Medical Board of California. (*Bell* v. *Sharp Cabrillo Hospita, supra*, 212 Cal.App.3d at p. 1038, fn. 3.) Accordingly, it was entirely appropriate for LCMH to satisfy itself that nothing of the sort had occurred here before it acted upon appellant's application for reinstatement. "[A] hospital which closes its eyes to questionable competence and resolves all doubts in favor of the doctor does so at the peril of the public"

(*Rhee* v. *El Camino Hospital Dist.*, *supra*, 201 Cal.App.3d at p. 489), thereby undercutting the goal of the state's peer review mechanism. (Bus. & Prof. Code, § 809, subd. (a)(6).)

Appellant tries to cast doubt on the legality of LCMH's decision by suggesting his reappointment application was denied because of a matter beyond his control, MHG's refusal to grant LCMH access to the charts involved in the section 805 reports. In truth, LCMH's decision was based upon appellant's conduct and his conduct alone.

Hospitals must adopt written bylaws which provide formal procedures for the evaluation of staff applications for reappointment. (Cal. Code Regs., tit. 22, § 70703, subd. (b).) LCMH's bylaws specified in relevant part that "[e]ach recommendation concerning the reappointment of a Professional Staff member and the clinical privileges to be granted upon reappointment shall be based upon such member's professional competence and clinical judgment in the treatment of patients, his/her ethics and conduct, his/her attendance at Professional Staff meetings and participation in Staff affairs, his/her compliance with Hospital Bylaws, and Professional Staff Bylaws, Rules and Regulations, payment of all current or past medical staff dues, his/her cooperation with hospital personnel, his/her relations with other practitioners, and his/her general attitude toward patients, the hospital, and the public." (Art. V, § 5.3(c).) They further state that "[p]eriodic redetermination of clinical privileges and the increase or curtailment of same shall be based upon observation of care, review of the records of patients treated in this or other hospitals, or review of the records of the Professional Staff which document the member's participation in the delivery of medical care." (Art. VI, § 6.1(d).)

It is thus clear from LCMH's bylaws that the reappointment process entails a review of patient records at LCMH and elsewhere, and that an applicant's cooperation with hospital personnel and compliance with LCMH's bylaws are factors to be considered in making a final decision. The nature of cooperation expected of a physician pursuing reappointment is made more specific in the application form. First, the physician must disclose if his or her privileges at any hospital have changed during the preceding two years. Second, if such a change did take place, the physician is required to submit a written and signed explanation. Third, by signing the application form, a physician expressly "agree[s] to abide by the Hospital and Professional Staff Bylaws and Rules and Regulations" and to the following conditions:

"I hereby authorize release of information to Little Company of Mary Hospital Professional Staff to verify any information which I have stated on

my Reappointment application. I understand that information may be requested from other hospitals regarding my performance. [¶] I have not knowingly omitted or concealed any information in this Reappointment application. [¶] I further authorize the members of the Little Company of Mary Hospital Professional Staff to review the hospital records of my practice for the purpose of enabling said departments and committees to make an informed appraisal of that practice."

Despite his responsibilities under the bylaws and application, appellant actively interfered with LCMH's ability to gather the information necessary to adequately assess his competence for reappointment to the staff. Insofar as we can ascertain from the administrative record, he not only neglected to prepare the obligatory written explanation about the events which led to his suspension and the cessation of his privileges at MHG, he refused to provide an oral account of what had transpired. He also resisted LCMH's request to review the MHG patient charts which had prompted the section 805 reports. LCMH then asked MHG for access to the charts. Although MHG had initially been cooperative in providing information to LCMH, a few weeks after appellant withdrew his authorization to allow LCMH to examine records at other hospitals, MHG's attitude shifted. Interestingly enough, it reported not that it *would not* release the requested information (Civ. Code, § 56.10, subd. (c)(4)), but that it *could not* do so. MHG's rather careful choice of words, following so closely on the heels of appellant's revocation announcement, suggests MHG may have been aware of and reacting to appellant's action.

Appellant makes much of the fact that LCMH failed to show he had the ability to produce the pertinent charts after MHG declined to release them. If he had been unable to persuade MHG to release the charts by signing a new consent form, he should have advised LCMH of that fact and offered to share what documentation or information was in his possession. Instead, he steadfastly refused to cooperate because the application and bylaws did not explicitly compel him to "produce documents." At that juncture, LCMH essentially had two options: (1) to approve the reappointment based solely on appellant's performance at LCMH; or (2) to deny the reappointment as a result of appellant's failure to produce the charts. It opted for the latter course, not because it assumed appellant's performance at MHG had been below the standard of care, but because his conduct prevented it from resolving the question.

LCMH's actions were entirely reasonable given the facts of this case. To conclude otherwise would permit appellant to prevent LCMH from acting "in the interest of maintaining and enhancing quality patient care" (Bus. &

Prof. Code, § 809.05, subd. (d)), by first withholding information LCMH needed to complete its investigation and then withdrawing the authorization LCMH required to gain access to the germane records or acquire knowledge of their contents from the only other logical source, MHG. Such a result would also fly in the face of this state's policy of protecting the health and welfare of its residents by excluding, through a peer review process, "those healing arts practitioners who provide substandard care or who engage in professional misconduct . . . ." (Bus. & Prof. Code, § 809, subd. (a)(6).)

Nothing which occurred in the present case was contrary to the principle established in *Anton* v. *San Antonio Community Hosp., supra,* 19 Cal.3d 802, 824-825.) That case simply stands for the proposition that "the full rights of staff membership vest upon appointment, subject to divestment upon periodic review only after a showing of adequate cause for such divestment in a proceeding consistent with minimal due process requirements." (*Id.* at pp. 824-825, italics omitted.) That standard was obviously met here.

## II. *Sufficiency of Evidence*

■ Appellant expends much energy arguing there was no legal justification for LCMH's demand that he produce patient charts and its denial of his bid for reappointment when he refused to do so. He emphasizes his competent performance at LCMH and the uncertainty about whether a review of the charts, assuming he could have produced them, would have actually uncovered standard of care problems. We dealt with these issues in conjunction with appellant's preceding contention and concluded the action taken by LCMH was both reasonable and warranted. No purpose would be served by repeating that discussion.

After reviewing appellant's remaining challenges to five of the findings made by the judicial review committee and adopted by the board of directors,[4] we have determined they are "supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (d); *Mir* v. *Charter Suburban Hospital* (1994) 27 Cal.App.4th 1471, 1477

---

[4]The disputed findings read:

"F. The disclosure of an applicant for reappointment of adverse action as to clinical privileges at another hospital obligates the Professional Staff to investigate the adverse action thoroughly before making a recommendation on the application to the Board of Directors of the Hospital. . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"J. Dr. Webman's application for reappointment to the LCMH Professional Staff and the Health Facility Reporting Forms submitted by Memorial Hospital of Gardena placed LCMH Professional Staff on reasonable notice that a serious issue about Dr. Webman's clinical practice had arisen at another hospital. . [*sic*] With such notice, the LCMH Professional Staff

[33 Cal.Rptr.2d 243]; *Bonner v. Sisters of Providence Corp.* (1987) 194 Cal.App.3d 437, 44 [239 Cal.Rptr. 530]; *Pick v. Santa Ana-Tustin Community Hospital* (1982) 130 Cal.App.3d 970, 980, fn. 6 [182 Cal.Rptr. 85].)

Appellant's criticism of findings F and J is premised on the notion that the reappointment application did not disclose an "adverse action" which placed LCMH on notice that "a serious issue about [appellant's] clinical practice

became obligated to investigate the events at Memorial Hospital of Gardena thoroughly, and Dr. Webman became obligated to document his qualifications in the face of such information.
" . . . . . . . . . . . . . . . . . . . . . . . .

"L. Despite repeated requests from the LCMH Professional Staff, Dr. Webman refused to provide any meaningful information on the final action taken on his professional staff membership and clinical privileges at Memorial Hospital of Gardena or any information about the medical records which prompted the summary suspension of all or part of his clinical privileges at Memorial Hospital of Gardena. Dr. Webman lawfully could have disclosed patient identifiable medical information in his possession without the consent of the patient (Civ. Code, § 56.10, subd. (c)(4)) or could have disclosed medical records with patient identifying data deleted.

"M. Dr. Webman did not reasonably cooperate with the LCMH Professional Staff or attempt to obtain the information requested by the LCMH Professional Staff. Indeed, he revoked his authorization of members of the LCMH Professional Staff to review medical records at any hospital other than Little Company of Mary Hospital.

"O. The failure of Dr. Webman to cooperate reasonably with the LCMH Professional Staff and to attempt to obtain the information requested by the LCMH Professional Staff (a) precluded the LCMH Professional Staff from evaluating his competence, clinical judgment and conduct to make a favorable recommendation in accordance with section 5.3(c) of the Professional Staff Bylaws and (b) resulted in his failure to document his qualifications for reappointment adequately in accordance with section 3.4(a) of the Professional Staff Bylaws. . . ."

LCMH's board of directors additionally found with respect to finding J that "the second report from Memorial Hospital of Gardena did not resolve the concerns regarding Dr. Webman's qualifications and that given the questions it was incumbent upon the Medical Staff to further investigate the cases in order to assess whether Dr. Webman qualified for reappointment." With respect to finding O, the board stated, "Dr. Webman argued that Section 3.4(a) of the Bylaws, which set the 'Qualifications for Consideration for Membership,' and limits staff membership to physicians who can 'document their background, experience, training and demonstrated competence. . . .' applies only to initial applicants. The Board agrees that section could be construed in that fashion, although clearly the standards established in that section are intended to apply continuously to members as well as initially to applicants. The Appellate Review Committee determined, however, that the reference to 3.4(a) was surplusage, in any event, since 5.3(c) of the bylaws already requires reappointment decisions to be based upon the member's professional competence and clinical judgment in the treatment of patients. Further, Section 6.1, which pertains to clinical privileges, requires that 'periodic redetermination of clinical privileges . . . shall be based upon . . . review of the records of patients treated in this or other hospitals . . .' Dr. Webman's failure to cooperate reasonably prevented the Medical Staff from being able to review the records, and assess Dr. Webman's competency. Dr. Webman made no specific efforts to get Memorial Hospital of Gardena to release the records and instead affirmatively withdrew his permission, to the extent that it was ever given."

had arisen at another hospital" and required investigation. His portrayal of the evidence is untenable and must be rejected.

Appellant's objection to finding G is likewise without merit. The statement in finding G that appellant had an obligation to document his qualifications and cooperate in the investigation of an adverse matter is distinct from, and in no way conflicts with, LCMH's burden of proving at the hearing before the judicial review committee that appellant's application for reappointment should be denied. Finding G focuses on that period of time during which LCMH was gathering and reviewing information in order to make a reappointment recommendation, rather than on the hearing process which followed. Everyone at the judicial review committee hearing recognized LCMH's bylaws placed the burden of proof on the medical executive committee at that juncture. (Art. VIII, § 8.3-2(j)(3 ); see also Bus. & Prof. Code, § 809.3. subd. (b)(3).)

Appellant quarrels with the charge in finding L that he refused to provide "any meaningful information" on the final action taken at MHG, citing the letter his attorney wrote to him in February 1991. It is self-evident LCMH was not required to credit the attorney's account when appellant was unwilling to confirm its accuracy in his own words. Appellant also complains that finding L is deficient because it ignores the question of whether the evidence presented at the judicial review committee hearing established that he had the relevant patient charts in his possession or could have obtained them from MHG. Such a showing was not required to uphold LCMH's decision under the unique circumstances of this case. LCMH did not assume appellant had or could actually obtain the MHG patient records. It relied upon the fact that he made no effort to produce them and revoked the authorization which presumably would have permitted LCMH to gain access to them. In assailing finding L, appellant lambastes LCMH because it did not act on his application for reappointment in a timely fashion. In truth, much of the delay was caused by appellant's own obstreperous behavior. To the degree LCMH contributed to it, appellant was not prejudiced. Nor was he justified in withdrawing the very authorization which would have allowed LCMH to finally resolve the matter.

The emphasis in finding M on appellant's revocation of his authorization to review records at other hospitals is highly relevant inasmuch as the revocation preceded by a few weeks MHG's announcement that it could not release the charts requested by LCMH. Equally relevant is the observation in findings M and O about appellant's lack of cooperation with LCMH. Evidence of appellant's repeated unwillingness to cooperate was necessary to

evaluate the reasonableness of LCMH's decision to deny his application for reappointment when he refused to produce the MHG charts. It was appellant's continuing resistance which precipitated LCMH's demand that he produce the charts. His failure to comply with that directive was but the last of several acts of defiance which interfered with LCMH's ability to fulfill its responsibilities under state law and its bylaws. Appellant's claim that lack of reasonable cooperation was never charged and he therefore had no notice he was expected to defend against it is unavailing. He does not allege he would have conducted his defense any differently if cooperation had been mentioned in the formal charges. Moreover, LCMH's previous communication with him supplied "adequate, if not formal, notice." (*Rhee* v. *El Camino Hospital Dist.*, *supra*, 201 Cal.App.3d at p. 497.)

## DISPOSITION

The judgment is affirmed.

Boren, P. J., and Nott, J., concurred.

A petition for a rehearing was denied November 9, 1995, and appellant's petition for review by the Supreme Court was denied January 23, 1996.