TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|   |   |   |
|---|---|---|
| OPINION | : | No. 15-301 |
| of | : | April 17, 2020 |
| XAVIER BECERRA Attorney General | : | |
| ANYA M. BINSACCA Deputy Attorney General | : | |

_____

THE MEDICAL BOARD OF CALIFORNIA has requested an opinion on the following question:

What is the meaning of the term "effective date," as used in Business and Professions Code section 805, which requires a report to be filed with the relevant state healing arts licensing agency "within 15 days after the effective date" of certain actions taken by a peer review body against specified health care practice licentiates?

CONCLUSION

The term "effective date," as used in Business and Professions Code section 805, means the date on which the triggering decision becomes final, following the conclusion of any appeal by the licentiate to the peer review body, except where expressly provided otherwise.

1

ANALYSIS

Business and Professions Code[1] section 805, originally enacted in 1975,[2] is part of the legislative scheme by which certain state licensing agencies regulate the quality of health care practice in California. It applies to physicians, podiatrists, clinical psychologists, marriage and family therapists, clinical social workers, professional clinical counselors, dentists, and physician assistants (collectively, "licentiates").[3] It requires a peer review body to file a report (an "805 report") with the relevant licensing agency when the peer review body takes certain actions against a licentiate for "medical disciplinary cause or reason,"[4] that is, "that aspect of a licentiate's competence or professional conduct that is reasonably likely to be detrimental to patient safety or to the delivery of patient care."[5] The Legislature has declared that the filing of these reports with healthcare oversight agencies "is essential for the protection of the public."[6]

Organizations required to maintain peer review bodies that file such 805 reports include the medical staff in most hospitals and health-care practice groups, any non-profit-tax-exempt professional society comprising at least 25 percent of the covered licentiates in a geographic area, and any committees "organized by any entity consisting of or employing more than 25 licentiates of the same class" for the purpose of reviewing the quality of professional care.[7] For example, in hospitals, peer review bodies "evaluate physicians applying for staff privileges, establish standards and procedures for patient care, assess the performance of physicians currently on staff, and review such matters as the need for and results of each surgery performed in the hospital, the functioning of the patient records system, the control of in-hospital infections, and the use and handling of drugs within the hospital."[8] Peer review bodies for other licentiates perform comparable review functions in their respective settings.

A peer review body must file an 805 report with the relevant licensing agency any time the peer review body, for medical disciplinary cause or reason, denies or rejects a

---

[1] All further undesignated code references are to the Business and Professions Code.

[2] Assem. Bill No. 1 (2nd Ex. Sess. 1975) ch. 1, § 2.3.

[3] Bus. & Prof. Code, § 805, subd. (a)(2).

[4] Bus. & Prof. Code, § 805, subd. (b).

[5] Bus. & Prof. Code, § 805, subd. (a)(6).

[6] Bus. & Prof. Code, § 801.01.

[7] Bus. & Prof. Code, § 805, subd. (a)(1)(B).

[8] *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 10.

2

licentiate's application for membership or staff privileges; terminates or revokes a licentiate's membership, staff privileges, or employment; or imposes restrictions (or restrictions are voluntarily accepted) on staff privileges, membership, or employment for a cumulative total of 30 days or more in a 12-month period. The report must be filed "within 15 days after the effective date on which" any of these precipitating events occurs.[9] We are asked about the meaning of the phrase "effective date," particularly whether it refers to the date of the peer review body's initial decision, or instead to the resolution of the body's appeal process in the event the licentiate appeals that initial decision. We conclude that "effective date" for these purposes means the date on which the triggering decision becomes final, which will generally be following the conclusion of the licentiate's appeal of the peer review body's decision.

Our analysis begins with the statute itself. The "first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, [we] must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose."[10] If the statutory language is clear, we "follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend."[11] On the other hand, where ambiguity exists, "consideration should be given to the consequences that will flow from

---

[9] Bus. & Prof. Code, § 805, subd. (b). The subdivision provides in full:

(b) The chief of staff of a medical or professional staff or other chief executive officer, medical director, or administrator of any peer review body and the chief executive officer or administrator of any licensed health care facility or clinic shall file an 805 report with the relevant agency within 15 days after the effective date on which any of the following occur as a result of an action of a peer review body:

(1) A licentiate's application for staff privileges or membership is denied or rejected for a medical disciplinary cause or reason.

(2) A licentiate's membership, staff privileges, or employment is terminated or revoked for a medical disciplinary cause or reason.

(3) Restrictions are imposed, or voluntarily accepted, on staff privileges, membership, or employment for a cumulative total of 30 days or more for any 12-month period, for a medical disciplinary cause or reason.

[10] *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.

[11] *Coalition of Concerned Communities, Inc. v. Los Angeles* (2004) 34 Cal.4th 733, 737.

3

a particular interpretation."[12]  Important to this inquiry, the statutory language must be read "in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment."[13]

What is the plain and ordinary meaning of "effective date"?  The ordinary meaning of words is appropriately informed by dictionary definitions.[14]  Dictionaries state the relevant definition of "effective" as "operative; in effect"[15] and "[b]eing in force; operative, as a law."[16]  Black's Law Dictionary provides a similar, more legally oriented definition for "effective date":  "The date on which a statute, contract, insurance policy, or other such instrument becomes enforceable or otherwise takes effect, which sometimes differs from the date on which it was enacted or signed."[17]  Applying these concepts, we believe that when section 805 says a report must be filed within "15 days after the effective date on which any of the following occur," it means that the 805 report must be filed within 15 days of the decision's finality.

Such a decision becomes final after the peer review body's appeals process is completed.[18]  "A licentiate who is the subject of a final proposed action of a peer review body" that triggers the filing of an 805 report is entitled to procedural rights described in section 809.1, which culminate in a hearing held under section 809.2.  Section 809.1 entitles the licentiate to written notice of: the final proposed action; the fact that the action, "if adopted," will be reported under section 805; the right to request a hearing; and the time limit in which to request a hearing.[19]  If the licentiate timely requests a hearing, the licentiate is entitled to notice of the reasons for the final proposed action and the acts or omissions charged.[20]  A "final proposed action" is defined as "the final decision or

---

[12] *Dyna-Med v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387.

[13] *Coalition of Concerned Communities, Inc. v. Los Angeles*, *supra*, 34 Cal.4th at p. 737.

[14] *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1122-1123.

[15] American Heritage Dict. (1980) p. 416, col. 1, third definition.

[16] Funk & Wagnalls Standard College Dict. (1974) p. 421, col. 2, second definition.

[17] Black's Law Dict. (abridged 7th ed. 2000) p. 420, col. 2.

[18] See *Kaiser Foundation Hospitals v. Superior Court* (2005) 128 Cal.App.4th 85, 100-101 (doctor must exhaust appeals provided in peer review process before seeking judicial remedy for termination).

[19] Bus. & Prof. Code, § 809.1, subd. (b).

[20] Bus. & Prof. Code, § 809.1, subd. (c).

4

recommendation of the peer review body after informal investigatory activity or prehearing meetings, if any."[21]

Section 809.1 clearly contemplates that a licentiate is entitled to a hearing on the final proposed action before the peer review body's decision goes into effect and the 805 report is filed. A "*proposed* action" is, by definition, not yet in effect.[22] Moreover, section 809.1 states that an 805 report will be filed "if" the proposed action is "adopted."[23] Thus the statute distinguishes between a proposed action and one that has been adopted, and calls for the filing of an 805 report only after the action is adopted, or, in other words, becomes final.[24] This is consistent with case law indicating that "[t]he holder of a professional license has a property interest in the right to practice his or her profession, which cannot be taken away or restricted without [fair][25] process."[26] In the event that the licentiate does not request a hearing under section 809.1, it appears that the decision would become final once the time for appealing to the peer review body expires.[27]

Some have interpreted "effective date" as the date of the peer review body's final proposed decision, rather than the expiration of the time for the licentiate to appeal or the

---

[21] Bus. & Prof. Code, § 809.1, subd. (a).

[22] *Sahloblbei v. Providence Healthcare, Inc.* (2003) 112 Cal.App.4th 1137, 1148-1149; accord Merriam-Webster's Collegiate Dictionary (10th ed. 1995) p. 936, col. 1 (defining propose as "to form or put forward a plan or intention"), http://www.dictionary.com/browse/propose?s=t (defining propose as "to offer or suggest (a matter, subject, case, etc.) for consideration, acceptance, or action").

[23] Bus. & Prof. Code, § 809.1, subd. (b)(1).

[24] Similar language is used in subsequent sections. (E.g., Bus. & Prof. Code, §§ 809.2 ["If a licentiate timely requests a hearing concerning a final proposed action . . . ."; 809.3, subd. (a). ["During a hearing concerning a final proposed action . . ."].)

[25] "Since the actions of a private institution are not necessarily those of the state, the controlling concept in such cases is fair procedure and not due process. Fair procedure rights apply when the organization involved is one affected with a public interest, such as a private hospital." (*Applebaum v. Board of Directors* (1980) 104 Cal.App.3d 648, 657.)

[26] *Sulla v. Board of Registered Nursing* (2012) 205 Cal.App.4th 1195, 1201; *Sahloblbei v. Providence Healthcare, Inc.*, *supra*, 112 Cal.App.4th at pp. 1146-1147 (doctors have vested rights in staff membership requiring hearing before rights can be restricted or terminated).

[27] Bus. & Prof. Code, § 809.1, subd. (b)(4) (notice to licentiate must include time within which to request a hearing on the final proposed action).

5

conclusion of the appeal process. As discussed above, we do not find support for that interpretation in the language of sections 805 and 809.1, nor in the case law.[28]

Moreover, the 2010 enactment of a new provision within the statutory scheme buttresses our conclusion that section 805 uses "effective date" to mean the date the decision becomes final following a licentiate's appeal to the peer review body, rather than the date its proposed final decision is initially made, by requiring 805 reports to be filed *before* the appeals process occurs in specific cases.[29] Section 805.01 requires an 805 report to the relevant licensing agency "within 15 days after a peer review body makes a final decision or recommendation . . . *regardless of whether a hearing is held* pursuant to Section 809.2," when the decision is based on certain particularly concerning or dangerous circumstances.[30] These circumstances include incompetence, gross deviation from the standard of care, self-prescribing or self-administering controlled substances, abusing drugs or alcohol, repeated acts of excessive prescribing or providing of controlled substances, and sexual misconduct with a patient.[31] That section 805.01 provides for the filing of a report to the licensing agency under these circumstances regardless of the pendency of a licentiate's appeal strongly implies that the basic reporting requirement in section 805, subdivision (b) contemplates the filing of the 805 report only following a hearing, when one is requested.[32] This immediate reporting requirement allows the licensing agency to immediately investigate and take appropriate action in these particularly concerning or dangerous cases.

The sole justification advanced for interpreting "effective date" in section 805, subdivision (b) as the date of a peer review body's final proposed action, rather than the

---

[28] *Sahloblbei v. Providence Healthcare, Inc.*, *supra*, 112 Cal.App.4th at pp. 1148-1149 (rejecting argument that a final proposed action may be put into effect before providing the licentiate with the procedural rights in section 809.1).

[29] Sen. Bill 700 (2009-2010 Reg. Sess.) ch. 505, § 4.

[30] Bus. & Prof. Code, § 805.01, subd. (b), emphasis added. Section 809.5 also allows a peer review body to "immediately suspend or restrict clinical privileges of a licentiate where the failure to take that action may result in an imminent danger to the health of any individual," and then subsequently provide the licentiate with the notice and hearing rights in sections 809.1 through 809.4. (Bus. & Prof. Code, § 809.5, subd. (a).)

[31] Bus. & Prof. Code, § 805.01, subds. (b)(1)-(4).

[32] *Marsh v. Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881, 891 (where statute on certain subject omits particular provision, inclusion of such provision in another statute concerning related matter indicates Legislature's intent that provision is not applicable to statute from which it was omitted).

6

date the decision becomes final, is the importance of 805 reports to licensing agencies' ability to investigate and take prompt action against troublesome, and potentially dangerous, licentiates. We believe that the Legislature balanced this important concern with the fair process rights of licentiates by generally allowing licentiates to pursue their right to appeal before an 805 report is filed, while carving out exceptions requiring immediate action and immediate reporting concurrent with a licentiate's appeal under particularly concerning or dangerous circumstances.[33]

In sum, we conclude that the "effective date" for purposes of filing an 805 report is the date on which a peer review body's decision becomes final, following the conclusion of a licentiate's appeal to the body of its proposed final action, except where expressly provided otherwise.

*****

---

[33] See *Medical Staff of Sharp Memorial Hosp. v. Superior Court* (2004) 121 Cal.App.4th 173, 181–182 (recognizing "that the overriding goal[] of the state-mandated peer review process is protection of the public and that while important, physicians' [fair] process rights are subordinate to the needs of public safety"), citing *Webman v. Little Co. of Mary Hospital* (1995) 39 Cal.App.4th 592, 600–601, *Rhee v. El Camino Hospital District* (1988) 201 Cal.App.3d 477, 489, and *Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 626–627.

7